UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

KAREN OLSON SPERLI,                          :

                             :    Case No.: _____

              Plaintiff,      :

                             :    **DEMAND FOR JURY TRIAL**

     -against-          :

                             :

GAIN CAPITAL HOLDINGS, INC., JOSEPH :
A. SCHENK, GLENN H. STEVENS, TOM   :
BEVILACQUA, CHRISTOPHER W.       :
CALHOUN, ALEX GOOR, DOUG RHOTEN, :
CHRISTOPHER S. SUGDEN, and PETER   :
QUICK,                             :
              Defendants.    :

------------------------------------- X

## <u>COMPLAINT</u>

Plaintiff, Karen Olsen Sperli ("Plaintiff") by her undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## <u>NATURE OF THE ACTION</u>

1.    This is an action brought by Plaintiff against GAIN Capital Holdings, Inc. ("GAIN Capital" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with GAIN Capital, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. Plaintiff's claims arise in connection with the proposed acquisition of GAIN Capital

Holdings, Inc. by INTL FCStone Inc. ("INTL") through INTL's wholly-owned subsidiary, Golf Merger Sub I Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On February 26, 2020, GAIN Capital entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Merger Sub will be merged with and into the Company, with the Company surviving as a direct, wholly owned subsidiary of INTL.

3.      Upon consummation of the Merger, each share of GAIN Capital common stock will be converted into the right to receive $6.00 in cash for each GAIN Capital common stock owned (the "Merger Consideration").

4.      On April 10, 2020, in order to convince GAIN Capital public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by GAIN Capital financial advisor, GCA Advisors, LLC. ("GCA Advisors"), regarding the Proposed Transaction, and (ii) the Company's June and September 2019 Projections, and January 2020 Projections.

6.      The special meeting of GAIN Capital shareholders to vote for the Proposed Transaction has not been scheduled, but it is forthcoming because the Proposed Transaction is expected to close in mid-2020 and the shareholder vote is imminent (the "Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so Plaintiff can properly exercise her corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, and breach of the duty of candor/disclosure.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to GAIN Capital public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

**<u>JURISDICTION AND VENUE</u>**

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has

minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District.  Indeed, GAIN Capital common stock trades on the New York Stock Exchange ("NYSE"), which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's proxy solicitor, MacKenzie Partners, Inc, 1407 Broadway, 27th Floor, New York, NY 10018.

## PARTIES

12.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of GAIN Capital common stock.

13.     Defendant GAIN Capital is a public company incorporated under the laws of Delaware with principal executive offices located at Bedminister One, Suite 11, 135 US HWY 202/206, Bedminister, NJ, 07921. GAIN Capital common stock is traded on the NYSE under the ticker symbol "GCAP."

14.     Defendant Joseph A. Schenk is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15.     Defendant Glenn H. Stevens is, and has been at all relevant times, the president and a director of the Company and Chief Executive Officer.

16.     Defendant Tom Bevilacqua is, and has been at all relevant times, a director of the Company.

17.     Defendant Christopher W. Calhoun is, and has been at all relevant times, a director of the Company.

18.     Defendant Alex Goor is, and has been at all relevant times, a director of the Company.

19.     Defendant Doug Rhoten is, and has been at all relevant times, a director of the Company.

20.     Defendant Christopher S. Sugden is, and has been at all relevant times, a director of the Company.

21.     Defendant Peter Quick is, and has been at all relevant times, a director of the Company.

22.     The Defendants identified in paragraphs 14 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with GAIN Capital, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23.     GAIN Capital is a global provider of trading services and solutions to retail, institutional, and futures service customers. The company specializes in over the counter and exchange-traded markets. The services are provided through FOREX.com, Cityindex.com, brokers, and white label partners.

24.     On February 26, 2020 the Board caused the Company to enter into the Merger Agreement with INTL, whereby each share of GAIN Capital common stock will be converted into the right to receive $6.00 in cash for each GAIN Capital common stock owned.

25.     According to the February 27, 2020, press release announcing the Proposed Transaction:

        //

**GAIN Capital Holdings, Inc. to be Acquired by INTL FCStone Inc. for $6.00 Per Share in Cash**

BEDMINSTER, N.J., Feb. 27, 2020 /PRNewswire/ -- GAIN Capital Holdings, Inc. (NYSE: GCAP) ("GAIN" or the "Company") today announced it has entered into a definitive agreement to be acquired by INTL FCStone Inc. (NASDAQ: INTL) ("INTL FCStone"). Under the terms of the agreement, INTL FCStone will acquire the Company in an all-cash transaction. The Company's stockholders will receive $6.00 per share, representing approximately $236 million in equity value.

GAIN's business fits naturally within INTL FCStone's diversified and scaled franchise, and our shareholders will benefit from this combination by receiving a substantial premium in an all-cash transaction. GAIN was founded over 20 years ago with the intention of providing traders with low-cost access to foreign exchange markets. By joining INTL, we see an incredible opportunity to leverage their capabilities and ecosystem of products, and to deliver an even more comprehensive offering to our customers. Bringing together GAIN's expertise in serving the retail customer and INTL's unparalleled access to the financial markets creates an exciting value proposition and enables the combined group to serve a wider range of customers," commented Glenn Stevens, Chief Executive Officer of GAIN Capital Holdings, Inc.

"After a thorough evaluation of the options available, the Board of Directors is confident that this transaction will provide a significant opportunity for our stockholders to realize value for their shares while providing the best path forward for GAIN's business, employees and customers," said Mr. Stevens.

The transaction represents a 70 percent premium to the closing share price of the Company's shares on February 26, 2020 and a 60 percent premium to the volume-weighted average price of the Company's stock in the 30 trading days ending on February 26, 2020.

The transaction is the result of a comprehensive strategic alternatives review process taken by the Company's Board of Directors. The transaction has been approved by GAIN's Board of Directors. In addition, VantagePoint Capital Partners, Michael Spencer's private investment group IPGL and Glenn Stevens, representing in aggregate approximately 44% of GAIN's stockholders, have entered into agreements to vote in favor of the transaction. The transaction is expected to be completed in mid-2020, subject to regulatory approvals and other customary closing conditions.

Sean O'Connor, CEO of INTL FCStone, commented on the transaction, "As a result of this combination, GAIN's customers will benefit from a richer

product offering as well as the expanded resources and greater scale of the combined firm. INTL FCStone, in turn, will add a new digital platform to its global financial network, significantly expanding its offering to retail clients, as well as a complementary futures business."

GCA Advisors LLC acted as exclusive financial advisor and Davis Polk & Wardwell LLP acted as legal advisor to GAIN. Jefferies LLC acted as financial advisor and DLA Piper acted as legal advisor to INTL FCStone.

(Emphasis in original).

**The Proxy Omits Material Information**

26.     On April 10, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Proposed Transaction is expected to close by November 27, 2020 so the Shareholder Vote is imminent. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

27.     First, the Proxy fails to disclose all line items used to calculate EBITDA and EPS used for the June and September 2019 Projections.

28.     Second, the Proxy discloses the line items used to calculate Unlevered Free Cash Flow for the January 2020 Projections by stating in a footnote that it is defined as GAIN Capital's  earnings before interest and taxes, less cash tax expense, less capital expenditures, plus depreciation and amortization, less changes in net working capital.. However, the Proxy, fails to disclose any of the aforementioned line items. Most troubling, it does not even disclose EBIT which is the driving metric to calculate the Unlevered Free Cash Flow metric.  *Id.* at 50.

29.     Furthermore, The Proxy also fails to disclose all line items used to calculate Adjusted EBITDA and EPS for the January 2020 Projections.

30.      Defendants' failure to disclose all line items used to calculate EBITDA and EPS for the June and September 2019 Projections as well as the Adjusted EBITDA, Unlevered Free Cash Flow, and EPS for the January 2020 Projections renders the Proxy materially misleading. Proxy, 50.

31.      If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  Regarding future events, uncertain figures, and other information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the Company's projections relied upon by GCA Advisors, but have omitted crucial line items and reconciliations.  Thus, Defendants' omissions render the projections disclosed on page 50 of the Proxy misleading.

32.      Third, the Proxy omits material information regarding the financial analyses conducted by GCA Advisors.

33.      With respect to GCA Advisors' *Selected Public Company Analysis*, the Proxy fails to disclose the multiples observed for each selected company used in the analysis.  *Id.* at 45.

34.      With respect to GCA Advisors' *Selected Transactions Analysis*, the Proxy fails to disclose the multiples observed for each selected company used in the analysis and does not even provide a similar range like in the Selected Public Company Analysis.

35.     With respect to GCA's analysis of premiums paid in the section titled *Other Information,* the Proxy fails to disclose: (i) identify each transaction observed and (ii) the premiums paid in each transaction.

36.     Lastly, the Proxy omits crucial background information regarding the confidentiality agreement GAIN Capital entered into with Party A and five other parties identified in the Background of the Merger. Proxy, 30.

37.     The Proxy discloses that the Company executed a confidentiality agreement with Party A and the five mentioned parties, but the Proxy does not specify whether the confidentiality agreement contained a customary standstill provision. *Id.* at 30. If the confidentiality agreement did contain a standstill provision, then the Proxy also failed to disclose the material information concerning whether the confidentiality agreement contained a "don't ask, don't waive" ("DADW") provision, and whether that DADW provision remains in effect or has fallen away. This information is material to shareholders because if the DADW provision remains in effect, then the potential strategic partner would effectively be estopped from making a superior bid.  Any reasonable person would deem the fact that some of the likely topping bidders in the marketplace may be precluded from making a superior offer as significantly altering the total mix of information made available to shareholders. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999).

38.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

39.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the

Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

43.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

44.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company and (ii) the valuation analyses performed by GCA Advisors in support of its fairness opinion.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

46.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that GCA Advisors reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by GCA Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or

were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review GCA Advisors' analyses in connection with their receipt of the fairness opinions, question GCA Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

48. GAIN Capital is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

49. The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of GAIN Capital, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any

material information or contain any materially misleading statements.

60.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

61.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

62.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 22, 2020                         **MONTEVERDE & ASSOCIATES PC**

By:  _/s/ Juan E. Monteverde_____
    Juan E. Monteverde (JM-8169)
    The Empire State Building
    350 Fifth Avenue, Suite 4405
    New York, NY 10118
    Tel:(212) 971-1341
    Fax:(212) 202-7880
    Email: jmonteverde@monteverdelaw.com

    *Attorneys for Plaintiff*